Opinion by
Rice, P. J.,
This is an appeal by the plaintiff from a judgment for the defendant non obstante veredicto in an action in the nature of an action for slander of title. Two reasons were assigned by the learned court below for the judgment, first, that there was not, under all the evidence, sufficient proof of malice upon the part of the defendant; secondly, that there was no proof of special damage and there could be no recovery of punitive damages in the absence of such proof. We shall consider these separately.
1. For several years prior to the bringing of the action the parties thereto were severally making and selling similar garments, called by the defendant mufflers and by the plaintiff muffiets. Some of these were made of a single piece and others of two pieces. Defendant had obtained two patents, one a design patent, dated November 30, 1897, which expired on May 30, 1901, the other dated November 16, 1897, running fourteen years, containing three claims, the first and third' for a garment made of two pieces and the second for a garment *231 formed of a single piece. In a suit to which, the defendant was a party upon the latter patent, claims one and three thereof were declared invalid, and subsequently defendant filed a disclaimer in the United States Patent Office as to these two claims. Subsequently to the expiration of the patent of November 30, 1897, and to the above referred to adjudication and disclaimer of claims one and three of the patent of November 16, 1897, the defendant inserted an advertisement in various trade journals and issued circulars to plaintiff’s customers and others, headed by a picture of a muffler, underneath which were the words “Patented Nov. 16 & 30,1897, Way’s Muffler.” Then, after setting forth how his goods would be marked, the advertisement proceeded as follows: “Notice the label carefully and do not buy any infringing goods. Amy goods not thus marked, or not marked with .my old label thus: ‘Way’s Muffler Pat. Nov. 16 and 30, 1897. . . .’ are unlicensed infringements upon my patent, and their use or sale will be enjoined by me. I am pushing the suit to enjoin all the goods which the Hygienic Fleeced Underwear Company have put out, and, since the Court of Appeals has decided the ownership of the .patent in my favor, I propose to stop their infringing goods whenever I find them. Particularly guard against goods marked ‘Mufflet’ made by the Hygienic Fleeced Underwear Co.; they are infringements.” The plain import of the words of this advertisement is that all of the mufflets manufactured and sold by the plaintiff, including the two piece as well as the one piece garment, were unlicensed infringements of the defendant’s patents. Nor is there anything in the picture to qualify the words or to indicate to the public that only the one piece garment was meant; on the contrary, the evidence adduced by the plaintiff was to the effect that it was a picture of the two piece garment. The verdict in favor of the plaintiff, considered in the light of the charge of the court, implies a finding that the charge of infringement, at least so far as it related to the two piece garment, was false, that the defendant knew it to be false, and that it was maliciously made. And if the case rested here, it could not be declared that the finding was unsupported by evidence. In reply to this prima facie case, the *232 defendant adduced evidence tending to show that the advertisement, with the exception of the picture and the words “Patented Nov. 16 & 30, 1897” underneath it, were prepared by his counsel who were familiar with his patents and the litigation concerning them, and that they were published by the defendant under advice of counsel that all of the goods manufactured by the plaintiff, both the one piece and the two piece garments, infringed claim two of the defendant’s patent. Assuming for present purposes that this evidence, if believed by the jury, would have warranted them in finding that the defendant acted in good faith upon advice of competent counsel who knew the facts, and that if they so acted this would repel all inference of malice and constitute a complete defense, does it follow that binding direction for the defendant ought to have been given? Clearly not. Apart from the question of damages, which we shall consider later, the. plaintiff had presented a prima facie case upon which it had a right to go to the jury, and that right was not affected by the fact that the defendant’s evidence if believed by the jury would have sustained a verdict in his favor. While, in general, the question of probable cause is one of law for the court, it is for the jury to determine whether the facts relied on to constitute it are established by the evidence, unless they be admitted or be beyond controversy. In the present case, proof of the facts relied on by the defendant to constitute probable cause depended wholly upon oral testimony of communications between. defendant and his counsel. From the very nature of the evidence the plaintiff could not be expected to produce witnesses to deny that such communications were had, and no implication of an admission of the facts testified to arose from its failure to do so. Not only the question whether the defendant’s counsel gave the advice testified to, but the question whether in consequence thereof and in view of all the circumstances he honestly believed that he had a right to make the charge of infringement, was for the jury. It was a plain case for the application of the general rule that when proof of the plaintiff’s case or defendant’s defense depends upon oral testimony it is the province of the jury to decide, under instructions from the court as to the law ap~ *233 plicable to the facts, subject to the salutary power of the court to award a new trial if it should deem the verdict contrary to the weight of the evidence: Reel v. Elder, 62 Pa. 308; Perkiomen R. R. Co. v. Kremer, 218 Pa. 641; Colonial Trust Co. v. Getz, 28 Pa. Superior Ct. 619. As there could not have been a binding direction in favor of the defendant upon the question of probable cause, it follows that the judgment against the verdict, if it rested alone upon the ground that the plaintiff was’ concluded by the defendant’s evidence upon that question, could not be sustained: Dalmas v. Kemble, 215 Pa. 410; Bond v. Penna. R. R. Co., 218 Pa. 34; Ackley v. Bradford Township, 32 Pa. Superior Ct. 487.
2. We come then to the question of damages. Notwithstanding the current name, an action for the wrong called slander of title is not like an action for ordinary defamation; “it is an action on the case for special damage sustained by reason of the speaking or publication of the slander of the plaintiff’s title:” Webb’s Pollock on Torts, 389, citing Malachy v. Soper, 3 Bing. N. C. 371. In the same connection it is said, actual malice — that is, absence of good faith — no less than special damage is of the gist of the action. The learned author then goes on to say that while formerly this kind of action appears to have been applied only to statements in disparagement of plaintiff’s title to real property, it is now understood that the same reason applies to the protection of title to chattels and of exclusive interests like patent rights and copyrights; and this is the view generally held at this time: 25 Cyclopedia of Law & Procedure, 559. In Odgers on Libel and Slander, 138, we find the following clear statement of the nature of the action. “But .... there is a branch of the law (generally known by the inappropriate but convenient name — slander of title) which permits an action to be brought against anyone who maliciously decries the plaintiff’s goods or some other thing belonging to him, and thereby produces special damage to the plaintiff. This is obviously no part of the law of defamation, for the plaintiff’s reputation remains uninjured; it is really an action on the case for maliciously acting'in such a way as to inflict loss upon the plaintiff. All the, preceding *234 .rules dispensing with proof of malice and special damage are, ■therefore, wholly inapplicable to cases of this kind. Here, as in:all other actions on the case, there must be et damnum et injuria. The injuria consists in the unlawful words maliciously spoken, and the damnum is the consequent money loss to the plaintiff.” ■ Speaking further of the prerequisites to recovery ■the learned author says: “Lastly, special damage must be proved, and shown to have arisen from the defendant’s words.” Again .he says, citing authorities: “The special damage must always be such as naturally or reasonably arises from the use of .the .words.”'- The same doctrine as to the nature of the action and as to the necessity of alleging and proving special damage is stated very clearly and sustained by the citation of 'numerous .authorities in 25 Cyclopedia of Law & Procedure ;at pages 558-561. The following language of Parke, B., in Brook v. Rawl, 4 Exch. 521, which is quoted in 2 Addison on Torts (Wood’s ed.) 361, and by other writers on the .subject, shows the strictness with which it is held that special damage must be shown: “To support the action, it ought to be shown.that the false statement was made mala fide, and that special damage ensues therefrom. If some portions of the statement are bona fide, the injured party cannot recover, unless he.-can distinctly trace the damage as resulting from that part which is mala fide.” An instructive case upon the subject in which numerous authorities are cited and the doctrine as above stated is elucidated is Burkett v. Griffith, 90 Cal. 532, 13 L. R. A. 707. While the decisions of our Supreme Court upon the subject are not numerous, and none of them discusses the precise question presented here, yet it seems .permissible to say that the necessity of alleging and proving special damage is .taken for granted. See Paull v. Halferty, 63 Pa. 46; Young v. Geiske, 209 Pa. 515. The plaintiff’s statement of claim was evidently framed with these principles in ■view “,tp recover damages for the aforesaid willful and malicious .slander of the plaintiff’s right to manufacture and sell the said _■ garment, -and .to .recover -the loss actually sustained by it from ,.the;loss .of-orders which it otherwise would have received for ■its said, goods,’ .and for the loss sustained by the cancellation *235 by plaintiff’s customers of their existing orders for said goods, directly occasioned by reason of said advertisement and written and printed notices sent to plaintiff’s customers.” But on the trial counsel stated: “We do not propose to go into the details of the actual loss. In an action for slander of title, we have two remedies: the right to relief for the actual loss occasioned, and we have a right to punitive damages if we show malicious intent. We do not propose to take the time of your honor and the jury and go into the details of the actual loss that has come to our knowledge, but we propose to rely upon the evidence showing malicious intent and ask for punitive damages.” It is true that afterwards the plaintiff offered to show that immediately after the publication its customers canceled orders previously placed with the plaintiff, but these offers were rejected and the rulings are not assigned for error. Whether erroneous or not, the result is the same, .that as the record comes before us it contains no evidence of special damage. It is true it was declared in Stroud v. Smith, 194 Pa. 502, that under the circumstances of that case punitive damages could have been recovered; but in that case there was proof of special damage. The case is not authority for the proposition that an action for slander of title can be maintained without alleging and proving special damage. As that is of the gist of the action it is impossible to see how there can be a recovery in the absence of such allegation and proof.
The judgment is affirmed.