516 A.2d 1217

**Lawrence SULECKI, Appellant at No. 1993 Philadelphia 1984,**

v.

**SOUTHEAST NATIONAL BANK, Appellant at No. 2061 Philadelphia 1984.**

Superior Court of Pennsylvania.

Argued Feb. 24, 1986.

Filed Oct. 28, 1986.

Robert T. Seiwell, Media, for appellant in No. 1993 and appellee in No. 2061.

John T. Salvucci, Plymouth Meeting, for appellant in No. 2061 and appellee in No. 1993.

Before CIRILLO, President Judge and CAVANAUGH, BROSKY, WIEAND, MCEWEN, OLSZEWSKI, DEL SOLE, MONTEMURO and TAMILIA, JJ.

CIRILLO, President Judge:

Plaintiff and defendant have both appealed from an order of the Court of Common Pleas of Delaware County. Plaintiff sued defendant on theories of defamation and interference with business relations. The jury was asked by way of special interrogatories whether defendant did defame plaintiff and interfere with its business relations, and the jury answered in the affirmative. Despite this, no compensatory damages were awarded. However, the jury did

award plaintiff $75,000.00 in punitive damages.[1] The trial court found this award shocking and ordered remittitur to $35,000.00.

Defendant contends it was privileged to make the statements which formed the basis for plaintiff's cause of action. Essentially, defendant, a bank, informed prospective borrowers that plaintiff, an automobile dealer, sold such inferior automobiles that no car loans would be made to anyone insistent upon buying a vehicle from plaintiff. Defendant characterizes its statements as true and made in the ordinary course of business. Plaintiff has maintained from the outset that defendant sought purposely to drive it out of business.

The trial court expressly recognized the existence of a privilege. We must therefore determine whether that privilege was exceeded. As we reiterated in *Chicarella v. Passant*, 343 Pa.Super. 330, 494 A.2d 1109 (1985), a privilege is abused when the subject statements are activated by negligence or malice, or are beyond the scope of that which is necessary to accomplish the purpose for which the privilege exists. The jury was properly charged to that effect. Through its verdict and interrogatory answers, the jury clearly found that in fact defendant did exceed its privilege. We find no basis for disturbing this finding on appeal in light of the evidence presented at trial.

Defendant also attacks the award itself as contrary to law. The trial court, reading from the Pennsylvania Suggested Standard Jury Instructions (Civil) § 14.02, Subcommittee Draft (September 26, 1976), instructed the jury that no reasonable relationship need exist between compensatory and punitive damages. Defendant failed to object to this charge at trial but now maintains that such a reasonable

1. As the trial court opined, it may have been that the jury simply lumped a compensatory award with the punitive figure to arrive at a single, tidy amount. In any event, the interrogatory answers make clear that plaintiff sustained his cause of action despite the zero compensatory damage figure. *See Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 483 A.2d 456 (1984) (special damages need not be proven in libel case).

relationship must exist. It claims that the jury's award must be set aside because no punitive award can bear a reasonable relationship to a compensatory award of zero.

■ In *Kirkbride v. Lisbon*, 357 Pa.Super. 322, 516 A.2d 1 (1986), we re-affirmed the longstanding rule that a jury's award of punitive damages must bear a reasonable relationship to the compensatory award. However, the more pointed question presented here is whether any punitive award can bear a reasonable relationship to a zero compensatory award. This issue has already been settled in Pennsylvania. In *Hilbert v. Roth*, 395 Pa. 270, 276, 149 A.2d 648, 652 (1959), our Supreme Court held that in order to recover punitive damages, the plaintiff must first prove actual compensatory damage. *See also Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 464 A.2d 1243 (1983); *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19 (3d Cir.1984). Therefore, punitive damages may not be imposed in cases of zero compensatory awards. Since punitives are not allowable, the issue of proportionality should never arise.

The defendant now recognizes that under Pennsylvania law, as expressed in *Hilbert*, punitive damages cannot be imposed unless compensatory damages are awarded. Therefore, he asserts that we must reduce the final award of $35,000 in punitive damages to zero in order to comply with the above cited precedent. However, the defendant failed to object at trial when the trial judge incorrectly instructed the jury on this point.

Specifically, the trial court said:

Now, members of the jury, the amount that you would assess as punitive damages need not bear any relationship to the amount you choose to award as compensatory damages. It's not necessary that you award compensatory damages to plaintiff in order to assess punitive dam-

ages against the defendant as long as you find in favor of the plaintiff....[2]

We must decide therefore, the effect of the defendant's failure to object to this instruction where, in reliance thereon, the jury awarded punitive damages even though the plaintiff had failed to prove actual damages.

■ In *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974), the Supreme Court did away with the rule of basic and fundamental error in connection with post-trial review of jury instructions. Thereafter, the court said, a specific objection would have to be taken to preserve an allegedly erroneous instruction for later review. In the instant case, the defendant did not object to the trial court's erroneous instruction that the jury could award punitive damages even though the plaintiff had sustained no actual damage. The error in the trial court's instructions, therefore, was waived. The appellant agreed to the court's instruction that punitive damages could be awarded even if there were no compensatory damages, and the bank will not now be allowed to complain that the jury followed the instructions of the trial court.

Defendant also contends that the $35,000 award was excessive. It argues that its failure to object to the incorrect jury charge does not affect its right to now argue the separate issue of "excessiveness." However, it asserts that the punitive award of $35,000 is excessive because it lacks a reasonable relation to the compensatory award of zero. This is merely a restatement of the issue disposed of in *Hilbert* and discussed above. No matter what language it chooses to express itself, defendant cannot alter the fact that it has waived this issue and we will not consider it.

■ Plaintiff also takes issue with the final award. He argues that a jury's award should be virtually sacrosanct and that the trial court erred in ordering remittitur from

---

**2.** These instructions appear to be based upon panel decisions of this Court in *Rhoads v. Heberling,* 306 Pa.Super. 35, 451 A.2d 1378 (1982) and *Laniecki v. Polish Army Veterans Association,* 331 Pa.Super. 413, 480 A.2d 1101 (1984). These panel decisions, however, are in conflict with *Hilbert v. Roth, supra,* and other Supreme Court decisions.

$75,000.00 to $35,000.00. However, we recognized in *Daley v. John Wanamaker, Inc.,* 317 Pa.Super. 348, 464 A.2d 355 (1983), that it is largely within the discretion of the trial court to reduce a punitive award which it finds excessive. This is not to suggest that the trial court's authority to reduce an award is without constraints. Indeed, the law is clear that the court may not declare an award excessive simply because it might have awarded a lesser amount sitting in place of the jury. The award must be shocking to the court's sense of justice before remittitur can be deemed appropriate. *Id.; See generally Marcone v. Penthouse International, Ltd.,* 577 F.Supp. 318 (1983), *rev'd on other grounds,* 754 F.2d 1072, (3rd Cir.1985), *certiorari denied* — U.S. —, 106 S.Ct. 182, 88 L.Ed.2d 151.

■ Typically, to consider whether a punitive award shocks one's sense of justice, the court must look to the nature of the conduct engaged in by the defendant, the purpose that punitive damages are intended to achieve, the amount of the award and its likely effect as punishment for the defendant's outrageous conduct as well as the relationship between the punitive and compensatory awards. *See Feld v. Merriam,* 314 Pa.Super. 414, 434–38, 461 A.2d 225, 235–37 (1983) *rev'd other grounds,* 506 Pa. 383, 485 A.2d 742 (1984).

■ The trial court's comprehensive opinion considers each of these factors. It states in pertinent part:

The purpose of assessing punitive damages is to punish the wrongdoer for malicious, wanton and reckless conduct and to deter future wrongdoing both by the Defendant and others by setting an example for the public in general. In determining the size of a punitive award sufficient to serve these purposes, the acts of the wrongdoer, the motives of the wrongdoer and the relationship between the parties are all to be considered. (Citation omitted) Moreover, consistent with the rule hereinabove adopted which establishes a cause of action as the sole prerequisite for a punitive award, one of the factors to be considered in determining the reasonableness of the puni-

tive award should be the relationship of the punitive award to the harm or injury to the plaintiff and the cause of that harm or injury. (Citations omitted)

There is no question but that an award of punitive damages was proper in this case. As discussed above, the Defendant-Bank, through its employees acting within the scope of their employment, slandered Plaintiff in his business as a used car salesman and abused its power in adversely affecting Plaintiff's relationship with his customers. An award of punitive damages, under the circumstances, was proper to punish the Bank and to deter the Bank and others from similar outrageous conduct. Nevertheless, an award of $75,000 in punitive damages was not necessary to accomplish this goal.

The record in this case reveals that the Defendant-Bank is a corporation which operates through its agents or employees. The outrageous conduct of the Bank in this instance resulted from a personal hostility or dislike of the Plaintiff by one of the Bank's employees, the senior vice president in charge of consumer lending, Earl McBride. The testimony indicates that it was this individual who sent out the directive to the other Bank employees that Plaintiff's customers were not to be given financing by the Bank and it was this individual who indicated that he intended to run the Plaintiff out of business. Although McBride at this time was acting within the scope of his employment, there is no indication in the record that the corporate officers of the Bank or its shareholders or board of directors condoned this conduct or even knew about it. Nor is there any indication that the Bank ever conducted itself in a similar fashion with any of its other customers. It is apparent that this is a case where a Bank employee, because of his personal dislike of the Plaintiff, used his position with the Bank to attempt to harm the Plaintiff....

We do not believe that it is necessary or proper, under these circumstances, to impose a penalty of $75,000 on the Defendant-Bank in order to punish or deter such activity.

This finding and determination by the trial judge which led to the remittitur of the punitive damage award is amply supported by the record, presents a correct analysis of the law and was a proper exercise of the discretion of the trial court in directing a remittitur. Therefore, we must reject plaintiff's assertion that the court erred in reducing the jury's award.

The jury awarded punitive damages in the amount of $75,000.00. The trial court determined that these damages were excessive and granted a new trial unless the plaintiff agreed to a remittitur to $35,000.00. Given the unchallenged instructions to the jury which prompted an award of punitive damages, we find no abuse of discretion with respect to the manner in which the trial court controlled the amount thereof.

Therefore, we affirm the judgment of the trial court.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring:

I concur in the result of this case, but write separately to address the majority's *obiter dictum* on the relationship between punitive and compensatory damages. Since no exceptions were taken to the trial court's charge that there need be no relationship between compensatory and punitive damages, this issue was not reserved for appellate review.

I must disagree with the *obiter dictum* in this case and its reliance on the holding in *Kirkbride v. Lisbon,* 357 Pa.Super. 322, 516 A.2d 1 (1986). This decision would adopt the rule that a jury's award of punitive damages must bear a reasonable relationship to the compensatory award. I believe that the better course would be to acknowledge the different purpose served by each type of damages and to adopt the view of the Second Restatement of Torts. The Restatement's section on punitive damages reads:

(1) Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to

punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future. (2) Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.

Restatement (Second) of Torts Sec. 908. Comment c to that section states that "it is not essential to the recovery of punitive damages that the plaintiff should have suffered any harm, either pecuniary or physical." *Id.* comment c.

The considerations given by the Restatement for assessment of punitive damages provide ample means by which punitive awards may be scrutinized. The utility of this approach is illustrated in the instant case in which the trial court ordered remittitur to prevent an excessive award of punitive damages. The rule allowed the punitive and deterrent purposes of this type of damages to be fulfilled in a situation where it was clear that the jury found the wrongdoer's conduct to warrant an award of punitive damages against it. Thus, the Restatement view provides flexibility without abandoning stability.